**FILED**

February 28, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JU

DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JESUS JAIME JIMENEZ,** | § | |
| **TDCJ No. 01363409,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-14-CA-0420-OLG** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER ON REMAND**

In February 2015, this Court dismissed as untimely Petitioner Jesus Jaime Jimenez's federal petition for a writ of habeas corpus challenging his 2006 Texas conviction for engaging in organized crime. (ECF No. 28). On appeal, the Fifth Circuit granted Petitioner a certificate of appealability, appointed Petitioner counsel, and heard argument on the issue of whether equitable tolling should apply to Petitioner's untimely federal habeas petition. *Jimenez v. Butcher,* No. 19-50499. In an unpublished opinion issued March 15, 2021, the Fifth Circuit vacated this Court's judgment and remanded for further consideration of the merits of Petitioner's federal habeas petition. *Jimenez v. Hunter*, 839 F. App'x 918 (5th Cir. 2021).

Currently before the Court are Petitioner's amended federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 67), Respondent Bobby Lumpkin's amended answer (ECF No. 71), and Petitioner's reply (ECF No. 73) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

# I. <u>Background</u>

## A.     <u>The Offense</u>

The facts of Petitioner's case were accurately summarized by the Texas Fourth Court of

Appeals on direct appeal:

> [Petitioner] is a member of the Mexican Mafia, as are several of his associates, Robert Perez, Sammy Menchaca, Robert Menchaca, and Stephen Flores. The State contended that [Petitioner] and his fellow mafia members conspired to rob several local drug dealers (Hector Cantu, Guadalupe Vela, and Frank Alvarado) of both property and money. According to the State, [Petitioner] and his co-conspirators threatened Cantu, Vela, and Alvarado with serious bodily injury or death. [Petitioner] and his co-conspirators were eventually arrested for their crimes.

> [Petitioner] and his co-conspirators were charged with engaging in organized crime in separate indictments in 2005. Flores subsequently agreed to cooperate with the State and provide testimony against his former associates. On March 6, 2006, approximately 20 days before a joint trial was set to commence, the State re-indicted [Petitioner] and his co-conspirators in separate indictments for engaging in organized crime. The trial court eventually severed each of [Petitioner]'s co-defendants from the case. [Petitioner] proceeded to trial on his own on April 3, 2006. Flores, Cantu, Vela, and Alvarado each testified against [Petitioner] at trial.

> *Jimenez v. State*, 307 S.W.3d 325, 328-29 (Tex. App.—San Antonio, June 24, 2009, pet.

ref'd) (ECF No. 15-9).

## B.     <u>Procedural History</u>

After hearing all the evidence, a Kerr County jury convicted Petitioner of engaging in

organized criminal activity and sentenced him to fifty years of imprisonment. *State v. Jimenez*,

No. B06-146 (198th Dist. Ct., Kerr Cnty., Tex. Apr. 7, 2006) (ECF No. 15-17 at 67-68). His

conviction and sentence were affirmed on direct appeal, and the Texas Court of Criminal

Appeals (TCCA) refused his petition for discretionary review. *Jimenez v. State*, 307 S.W.3d at

335 (ECF No. 15-9); *Jimenez v. State*, No. PD-0046-10 (Tex. Crim. App.). Thereafter, Petitioner

challenged the constitutionality of his state court conviction and sentence by filing a state habeas

corpus application in the state trial court. *Ex parte Jimenez*, No. 76,229-01 (Tex. Crim. App.) (ECF No. 19-2 at 7-39). The TCCA later denied the application without written order based on the findings of the trial court after a hearing. (ECF No. 19-3 at 2).

Petitioner initiated the instant proceedings in April 2014 by filing his original § 2254 petition (ECF No. 1), which Petitioner later supplemented with a lengthy memorandum in support and close to 300 pages of exhibits (ECF No. 7). This Court dismissed Petitioner's § 2254 petition in February 2015 as untimely, finding Petitioner failed to establish extraordinary circumstances that would warrant equitable tolling of the limitations period. (ECF No. 28). Petitioner appealed this decision, and in an unpublished opinion issued July 5, 2018, the Fifth Circuit vacated this Court's judgment and remanded for further consideration of whether equitable tolling is appropriate in this case. (ECF No. 41).

After receiving additional briefing, this Court again found that equitable tolling was not warranted and dismissed Petitioner's § 2254 petition as untimely in May 2019. (ECF No. 56). On appeal, the Fifth Circuit vacated this Court's judgment and remanded for consideration of the merits of the allegations raised in Petitioner's § 2254 petition. *Jimenez v. Hunter*, 839 F. App'x 918 (5th Cir. 2021) (ECF No. 62). Supplemental briefing has now been provided by both parties. (ECF Nos. 67, 71, and 73). The case is ripe for adjudication.

## II.  Petitioner's Allegations

In his amended federal petition and supplemental memorandum in support (ECF No. 67 at 1-48), Petitioner set forth the following claims for relief:

1.   His trial counsel rendered ineffective assistance by:

   (a)   failing to file a written and sworn motion for continuance;

   (b)   failing to object to the State playing audio recordings in Spanish, request that the court reporter record the content of these recordings, or object to the playing of the recordings without an English translation;

(c)     failing to argue at the motion for new trial hearing that it was improper to exclude exhibits regarding a witness's testimony;

(d)     failing to properly cross-examine the State's gang expert;

(e)     failing to adequately prepare to cross-examine the three complainants;

(f)     failing to object to the jury charge because it did not require unanimity;

(g)     failing to hire or request co-counsel to assist at trial;

(h)     failing to present evidence showing that State witness Stephen Flores had not been continuously locked up and was thus able to coordinate his story with other defendants;

(i)     failing to subpoena and present Trisha Gonzales as a witness;

(j)     failing to object to the presentation of "sinister" pictures depicting him in a false light;

(k)     failing to define "imminent threat" for the jury at closing argument;

(l)     failing to object to improper argument when the prosecutor expressed his personal belief that Petitioner was guilty;

(m)     failing to employ a reasonable defensive strategy; and

(n)     failing to request an order requiring the State to elect which of the 12 possible acts it relied on.

2.     He was denied the right to due process because the trial court judge was biased because he was receiving illegal gifts from the District Attorney.

3.     The prosecution withheld the following evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 87 (1963):

(a)     that State witness Stephen Flores was given the "valuable benefit" of a bond reduction in exchange for his testimony;

(b)     a recording of an alleged conversation between Flores and the District Attorney;

(c)     that Flores was allowed out of jail sometime in December 2005 or January 2006, allowing him to coordinate his story with the other complainants;

(d)     evidence that the three complainants continued to break the law by frequenting bars and dealing drugs, but got a free pass in exchange for their testimony; and

(e)     evidence that Flores was given leniency because he was a confidential informant in a federal investigation.

4

### III.  <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous.  *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself.  *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold."  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas

relief.  *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV.  <u>Merits Analysis</u>

### A.    <u>Trial Counsel's Representation</u> (Claim 1)

Petitioner first contends he was denied the right to effective assistance of counsel due to numerous alleged errors committed by his trial counsel, Robert Galvan.[1]  Each of these alleged errors were raised during Petitioner's state habeas proceedings and were litigated during an evidentiary hearing before the state habeas trial court.  (ECF No. 17-7).  Following the hearing, the state habeas trial court concluded that Petitioner failed to prove that counsel was ineffective under the *Strickland* standard.  (ECF No. 18-9 at 62-65).  These findings and conclusions were adopted by the TCCA when it denied Petitioner's state habeas application.  (ECF No. 19-3 at 2).

As discussed below, Petitioner fails to demonstrate the state court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

---

[1]        As discussed previously, Petitioner faults trial counsel for the following: (a) failing to file a written and sworn motion for continuance, (b) failing to object to the State playing audio recordings in Spanish, request that the court reporter record the content of these recordings, or object to the playing of the recordings without an English translation, (c) failing to argue at the motion for new trial hearing that it was improper to exclude exhibits regarding a witness's testimony, (d) failing to properly cross-examine the State's gang expert, (e) failing to adequately prepare to cross-examine the three complainants, (f) failing to object to the jury charge because it did not require unanimity, (g) failing to hire or request co-counsel to assist at trial, (h) failing to present evidence showing that State witness Stephen Flores had not been continuously locked up and was thus able to coordinate his story with other defendants, (i) failing to subpoena and present Trisha Gonzales as a witness, (j) failing to object to the presentation of "sinister" pictures depicting him in a false light, (k) failing to define "imminent threat" for the jury at closing argument, (l) failing to object to improper argument when the prosecutor expressed his personal belief that Petitioner was guilty, (m) failing to employ a reasonable defensive strategy, and (n) failing to request an order requiring the State to elect which of the 12 possible acts it relied on.

1.    The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards

of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 578 U.S 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S at 101.  That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

2.      <u>Continuance</u> (Claim 1(a))

On the morning of April 3, 2006—the day Petitioner was set to go to trial—his counsel, Robert Galvan, filed a written motion for continuance requesting that the trial be postponed. (ECF No. 15-17 at 44-45).  Specifically, the motion requested more time for the State to fulfill its *Brady* obligations and for the court to address certain issues raised in a separately filed motion for mistrial.  The same day, the trial court held a hearing and denied counsel's request after hearing arguments from the parties.  (ECF No. 16-17 at 42, 47-50).  Later, during the same hearing, the trial court severed Petitioner's case from the rest of his co-defendants and proceeded with Petitioner's case only.  *Id*. at 68.  Counsel re-urged his request for continuance, arguing that the severance placed him at a disadvantage because counsel for each of the co-defendants had been assigned a certain portion of the case and he was not prepared to handle the case in its entirety.  He requested "another day" to consult with the other attorneys and to review a video that had just recently been handed over by the State.  *Id*. at 68-69.  The trial court once again denied counsel's request for a continuance, and his trial began later that day.  *Id*. at 70.

On direct appeal, Petitioner argued that the trial court abused its discretion in denying counsel's motion for continuance.  Because the written motion filed by counsel was not sworn,

however, the appellate court found that Petitioner had failed to preserve error and denied relief. *Jimenez v. State*, 307 S.W.3d at 331.

Petitioner now argues that counsel was ineffective in waiving error by not filing a *sworn* written motion for continuance. But Petitioner does not show the trial court would have granted a continuance if only trial counsel's request had been sworn. To the contrary, the grounds for any such continuance would have likely been the same as that in both counsel's written and oral requests that were denied by the trial court. Moreover, Petitioner cannot show what benefit he would have gained if the trial court had granted the continuance. Counsel only requested an extra day to help prepare for cross-examination, and his cross-examination of the State's first witness ultimately did not begin until the following day anyway. (ECF No. 16-19 at 26).

Finally, Petitioner fails to establish that, had counsel preserved error, that an abuse of the trial court's discretion could be demonstrated on appeal. Without any argument in support, Petitioner bases his claim on the assumption that his claim would have prevailed on direct appeal. Yet, evidence beyond mere assumption is necessary for federal habeas corpus relief. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same). Petitioner's conclusory and speculative assertion of harm is unsupported by the record and insufficient to demonstrate that the state habeas court's rejection of this claim was unreasonable.

3.   Cross-Examination (Claims 1(d), (e))

Relatedly, Petitioner contends counsel had inadequate time to prepare for trial as a result of the trial court's last-minute severance and denial of his requested continuance. As a result, Petitioner argues that counsel did not have enough time to review a video of the police's third

interview with witness Stephen Flores which had recently been turned over by the State.[2]
Petitioner also asserts that counsel was unprepared to cross-examine the State's gang expert or
the three complainants who testified against Petitioner.

On state habeas review, the trial court concluded that "trial counsel made a strategic
decision not to review [the] Pork Chop III video until [the] date of trial" and that there was
"insufficient evidence that trial counsel's cross of witness 'Pork Chop' was deficient." (ECF
No. 18-9 at 63). The court also found insufficient evidence that counsel's cross-examination on
gang issues was deficient or that any testimony regarding gang issues was inaccurate. *Id*.
Finally, with regard to counsel's cross-examination of the complainants, the state court found
that "trial counsel testified he was focused on impeaching the robbery victim complainants and
there is not any evidence of inaccurate testimony by said complainants." *Id*. These factual
findings and credibility determinations are entitled to a presumption of correctness. *Richards v.
Quarterman*, 566 F.3d 553, 563-64 (5th Cir. 2009).

Petitioner has not rebutted the state court's findings and conclusions with clear and
convincing evidence. Indeed, a thorough review of the trial transcript indicates counsel provided
effective cross-examination on several issues, including the credibility of the State's gang expert
and the complainants' credibility as drug dealers. Counsel's cross-examination was reasonable
and "[s]peculating about the effect of tinkering with the cross-examination questions is exactly
the sort of hindsight that *Strickland* warns against." *See Castillo v. Stephens*, 640 Fed. App'x
283, 292 (5th Cir. 2016) (unpublished) (citing *Strickland*, 466 U.S. at 689).

Finally, Petitioner has not shown that counsel's strategic decision to wait until the eve of
trial to view the "Pork Chop III" video was unreasonable. The record indicates that counsel

---

[2]      During Petitioner's state habeas proceedings, this video is referred to as "Pork Chop III" in reference to
Flores' nickname among his Mexican Mafia associates.

chose to focus on impeaching Flores' testimony as well as the testimonies of the three complainants, and that counsel's cross-examination was anything but deficient.  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).  Because counsel's decisions regarding "Pork Chop III" and the subsequent cross-examination of Flores were strategic and imminently reasonable, they "will not support an ineffective assistance claim."  *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted).  This is particularly true when Petitioner provides nothing but conclusory assertions about counsel's performance.  *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel."   As such, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was unreasonable.

    4.   <u>Audio Recordings</u> (Claim 1(b))

In Claim 1(b), Petitioner argues his trial counsel was ineffective for allowing the State to play audio recordings in Spanish without objection.  The Texas Fourth Court of Appeals provided the following background when adjudicating a related allegation on direct appeal:

> The record shows [Petitioner] and his co-conspirators made more than 1,000 phone calls while incarcerated.  Many of these conversations occurred in English, but some occurred in Spanish.  [Petitioner] asked the State to produce copies of these telephone conversations during a pretrial hearing in November 2005.  After the State complied with his request, defense counsel urged the court to provide him with access to an interpreter to translate the Spanish conversations into English because he did not speak Spanish and needed the interpreter to prepare for trial.  The trial court denied the request.

> At trial, the State, without any objection from defense counsel, introduced 11 of the phone conversations into evidence, including five of the Spanish conversations.  The State offered these recordings to show [Petitioner] and his cohorts are members of a criminal organization and engaged in conversations

while incarcerated to further their criminal enterprise. The record shows that other than the opinion testimony of one of the State's witnesses (a law enforcement investigator) regarding the content of the conversations, no English translation of the Spanish recordings was provided to the jury.

*Jimenez*, 307 S.W.3d at 331-32.

Petitioner contends counsel rendered ineffective assistance by not objecting to the playing of audio recordings in Spanish or to the playing of the Spanish recordings without an English translation. According to Petitioner, this allowed the State's gang expert to "cherry pick" certain words and phrases to prove Petitioner was a member of the Mexican Mafia. Petitioner also faults counsel for not requesting that the court reporter record the Spanish audio recordings to later assist him with raising a claim on direct appeal.

Petitioner raised each of these allegations during his state habeas proceedings. In rejecting the allegations, the state habeas court found:

> 12.   [Petitioner] is fluent in Spanish, the recorded jail calls were his and trial counsel had ample opportunity to consult with his client and could have effectively cross-examined witnesses.

> 13.   [Petitioner]'s jail telephone calls were not transcribed for trial and to date still have not been transcribed. There is no evidence that the trial testimony was inaccurate.

(ECF No. 18-9 at 63). The court then concluded that while "[t]he failure to transcribe the jail telephone calls was an error, [] there is not any evidence that the trial testimony of either the gang expert or the tapes was inaccurate." *Id*. at 64.

Petitioner presents no clear and convincing evidence to rebut the state courts' factual findings. Indeed, Petitioner has provided no argument whatsoever demonstrating that he was entitled to a translation or that the State's expert incorrectly interpreted certain words or phrases. Instead, Petitioner offers only conclusory statements which are insufficient to support an IATC claim. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Petitioner's conclusory

allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence. *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

 Moreover, even to the extent that counsel's performance in this case could constitute deficient performance, this Court has independently reviewed the record of these proceedings and finds that any alleged errors were not prejudicial to his defense. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner has not established that the alleged error was prejudicial because, as the record demonstrates, the jury heard ample evidence implicating Petitioner other than the disputed phone recordings. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). In fact, the disputed phone recordings were only a small fraction of the evidence against Petitioner, as the jury heard testimony from the various victims of Petitioner's crimes, as well from his former associate, Stephen Flores. Also, because the phone recordings were not a critical part of the case against Petitioner, the State did not rely on them during either its opening or closing statements.

Given the overwhelming nature of the evidence against Petitioner, there is simply no reasonable probability that the jury would have voted to acquit Petitioner had counsel successfully excluded the phone recordings or obtained an English translation of the

conversations.  As such, Petitioner fails to demonstrate that the state court's denial of Petitioner's

IATC allegations was an unreasonable application of *Strickland*.

5.     <u>Motion for New Trial</u> (Claims 1(c), (i))

Petitioner's next two claims for relief concern the trial court's disqualification of defense

witness Trisha Gonzales due to a violation of Texas Rule of Evidence 614 ("the Rule"), which

provides for the exclusion of witnesses from the courtroom during trial.  As the Texas Fourth

Court of Appeals explained:

> The record reflects the Rule was invoked at the beginning of [Petitioner]'s
> trial.  The court admonished all witnesses they could not remain in the courtroom
> until called or converse with anyone about the case except the attorneys involved.
> Prior to the commencement of [Petitioner]'s case in chief, the State advised the
> trial court that defense witness Trish Gonzales had violated the Rule the previous
> day.  The State informed the court that [Petitioner] and Gonzales were recorded
> discussing details of the testimony presented in the case.  The State also advised
> the court that Gonzales knew the Rule was invoked at the beginning of trial as she
> acknowledged this point during her conversation with [Petitioner].  The trial court
> subsequently sustained the State's objection to Gonzales's appearance as a
> witness on the ground she had violated the Rule by speaking with [Petitioner]
> about the ongoing trial.

*Jimenez*, 307 S.W.3d at 335.

Petitioner argues that Gonzales was a key witness who could have explained his jailhouse

audio recordings and also provided testimony that the three complainants were drug dealers who

continued to deal drugs around the time of trial.  Petitioner claims his trial counsel was

ineffective for failing to subpoena Gonzales *after* she was excluded under the Rule in order to

make a record of what she allegedly would have testified to.  Petitioner also faults counsel for his

representation at the motion for new trial hearing, arguing that counsel should have explained to

the trial court that it was erroneous to exclude such exhibits at the hearing.[3]     But Petitioner

---

[3]     Interestingly, Petitioner was not represented by Mr. Galvan at the motion for new trial hearing, but rather
by his direct appeal counsel, Nancy Barohn.  To the extent Petitioner contends that Ms. Barohn was ineffective, the

provides no argument or authority to support these claims.   In fact, the allegations are accompanied by no briefing whatsoever.   For this reason alone, Petitioner's claims could be denied.

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims.   Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal.   *Ross*, 694 F.2d at 1012 (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch*, 907 F.2d at 530 (same).   Here, Petitioner's allegations are conclusory, speculative, and unsupported by any evidence or facts.   "Absent evidence in the record," however, this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."   *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011).   Thus, habeas relief is unavailable because the claims are conclusory.   *See Demik*, 489 F.3d at 646 ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller*, 200 F.3d at 282).

Furthermore, Petitioner raised identical conclusory allegations during his state habeas proceeding which were denied by the state habeas court.   In rejecting the allegations, the state court found that "[t]here was no evidence presented relative to Trish Gonzales' testimony" and concluded that counsel's performance was neither deficient nor prejudicial to Petitioner.   (ECF No.18-9 at 63-64).   Petitioner has not even attempted to demonstrate that this decision was either contrary to, or an unreasonable application of, clearly established federal law.   Consequently, petitioner's claims for relief are denied.

---

same standard set forth in *Strickland* still applies.   *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding *Strickland* applies equally to both trial and appellate attorneys).

6.     Jury Unanimity (Claims 1(f), (n))

Petitioner next contends that counsel was ineffective for failing to object to the jury charge because it did not require the jury to unanimously decide which of 12 possible criminal acts he committed. Petitioner also faults counsel for not requesting an order requiring the State to elect which of the 12 possible acts it relied on.

The Sixth Amendment guarantees that a federal or state criminal jury cannot convict unless it unanimously finds that the Government has proved each element of the charged offense. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). Here, Petitioner has provided this Court with no evidence or argument establishing the jury's verdict in this case was not unanimous. Such conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross*, 694 F.2d at 1012 (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Further, the record does not reflect that Petitioner's conviction was reached by a non-unanimous verdict. The jury was instructed that their verdict must be unanimous. (ECF No. 15-17 at 59-60). Juries are presumed to follow the instructions the trial court gives them, and Petitioner supplies no reason to second-guess that presumption here. *United States v. Owens*, 683 F.3d 93, 99 (5th Cir. 2012) (courts "presume[ ] that juries follow the instructions the court gives them."). More importantly, prior to reading the verdict in this case, the trial court asked whether the jury had reached a unanimous verdict, to which the presiding juror responded "Yes." (ECF No. 16-25 at 5). As a result, any objection made by counsel on such grounds would have been futile, and "counsel is not required to make futile motions or objections." *Koch*, 907 F.2d at 527; *see also Miller*, 714 F.3d at 904 n.6 (counsel is not required to make futile motions or objections). The state habeas court's denial of these claims was therefore not unreasonable.

7.      <u>Co-counsel</u> (Claim 1(g))

In his next allegation, Petitioner claims his counsel was ineffective for failing to hire or request co-counsel to assist at trial.  According to Petitioner, the case "was too big and complex for one attorney to try [] alone."  (ECF No. 67 at 27).  However, Petitioner admits that, unlike the other attorneys representing his co-defendants, Mr. Galvan was not court appointed, but rather was retained by Petitioner to represent him in this matter.  *Id*. at 29.  Thus, any request by Mr. Galvan to the trial court for co-counsel would likely have been futile.  *See Miller*, 714 F.3d at 904 n.6 (counsel is not required to make futile motions or objections).

Furthermore, the state habeas court found that Mr. Galvan made a strategic decision not to hire Nancy Bahron, an attorney with experience in gang-related issues, as counsel.  (ECF No. 18-9 at 62).  On federal habeas review, this Court is mindful that "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry."  *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006).  In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient.  *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).  Because there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," Petitioner's allegation fails.  *Richter*, 562 U.S at 105.

8.      <u>Present Evidence</u> (Claim 1(h))

In Claim 1(h), Petitioner faults counsel for not developing evidence that State witness Stephen Flores had been released on bond prior to Petitioner's trial.  Because Flores had not been continuously locked up, Petitioner argues, he was possibly able to coordinate his story with the three complainants prior to trial, contrary to the State's arguments at closing.  Petitioner makes this argument despite the fact that it was determined at the state habeas evidentiary hearing that

Flores never made bond and remained in custody the entire time leading up to Petitioner's trial. (ECF No. 17-7 at 43). For this reason, the state habeas court concluded "there was no evidence presented that [Flores] was released on bond prior to trial." (ECF No. 18-9 at 65).

Petitioner has not provided this Court with any evidence or argument supporting his allegation, much less rebutted the state court's finding of fact with clear and convincing evidence. Instead, Petitioner offers only conclusory assertions that Flores may have been able to coordinate his testimony with the complainants. Again, this is not enough to support an IATC claim. *See Demik*, 489 F.3d at 646. Petitioner's conclusory allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence. *See Miller*, 714 F.3d at 903. Petitioner's allegation therefore fails.

9.    Closing Arguments (Claims 1(j), (k), and (l))

Petitioner's next three allegations allege that counsel was ineffective during opening and closing arguments. According to Petitioner, counsel failed to object to the State's presentation of "sinister" pictures involving the Mexican Mafia that depicting him in a false light. Counsel also failed to object to improper argument by the State when the prosecutor improperly bolstered his case by telling the jury they have pursued the case "with particular zeal." And lastly, in a single sentence, Petitioner contends counsel was ineffective for failing to define the term "imminent threat" to the jury at closing or explain why there was no evidence of it.[4] None of these allegations provide Petitioner with a valid basis for federal habeas corpus relief.

Under Texas law, permissible jury argument includes the following: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) responses to

---

[4]    Petitioner provides no explanation or argument in support of this allegation. As such, Petitioner's claim is conclusory and does not warrant habeas relief. *See Miller*, 200 F.3d at 282.

opposing counsel's argument; and (4) pleas for law enforcement.  *See Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (citing *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008)).  The record in this case supports the State's inferences—both orally and visually—that Petitioner was a member of the Mexican Mafia.  For this reason, the prosecutor explained they have pursued this case zealously in order to send "a resounding message to our community" that organized crime "won't fly here."  (ECF No. 67 at 266-67).  The prosecution's arguments clearly fall within one of the four permissible avenues for jury argument. As such, counsel cannot reasonably be faulted for failing to raise what would amount to a futile objection to the prosecutor's argument.  *See Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance"); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection).

Moreover, "counsel has wide latitude in deciding how best to represent a client. . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Cotton*, 343 F.3d at 752-53.  Thus, counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690; *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2011) (holding the failure to present a particular line of argument is presumed to be the result of strategic choice).

Here, in light of the overwhelming evidence of Petitioner's guilt, there was nothing objectively unreasonable with trial counsel's chosen tactic of focusing on the credibility of the State's witnesses and responding to arguments made by the State instead of making potentially futile objections. Because counsel's decisions regarding opening and closing arguments were strategic and imminently reasonable, they will not support an ineffective assistance claim. *Clark v. Thaler*, 673 F.3d 410, 427 (5th Cir. 2012) (recognizing the broad deference to which counsel is entitled in making tactical decisions in closing argument). Petitioner has therefore not shown that the state court's denial of these claims was an unreasonable application of *Strickland*.

10.   <u>Strategy</u> (Claim 1(m))

Lastly, Petitioner next claims that his trial counsel failed to employ a reasonable defensive strategy. Specifically, he argues that "no prudent lawyer" would have chosen counsel's strategy of attempting to demonstrate that no robberies occurred because Petitioner was only collecting on debts that the complainants, who were Petitioner's customers, incurred through drug transactions. The state habeas court rejected Petitioner's argument, finding that "trial counsel's 'debt collection' strategy was not unreasonable." (ECF No. 18-9 at 63).

Petitioner fails to demonstrate that the state court determination was an unreasonable application of *Strickland*. Again, "counsel has wide latitude in deciding how best to represent a client. . ." *Yarborough*, 540 U.S. at 5-6, 8 ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *Trottie*, 720 F.3d at 243 (holding the failure to present a particular line of argument is presumed to be the result of strategic choice).

Here, counsel made an informed and reasoned decision to pursue a strategy that focused on portraying Petitioner as collecting on a debt instead of committing robbery.  Petitioner has not shown that this strategy was unreasonable or what strategy counsel should have pursued instead, much less demonstrated that the state court's denial of this claim was an unreasonable application of *Strickland*.  Thus, under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive.  *See Richter*, 562 U.S at 105.

11.   <u>Summary</u>

In sum, Petitioner has not pointed to any evidence rebutting the state courts findings of fact and conclusions of law, much less demonstrated that the state court's ultimate ruling on trial counsel's performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  Consequently, viewing these allegations under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claims.  Federal habeas corpus relief is therefore denied.

**B.    <u>Judicial Bias</u> (Claim 2)**

In his second claim for relief, Petitioner alleges that he was denied the right to due process because the trial judge was biased and had a personal interest in the case.  From roughly 2004 to 2007—around the time of Petitioner's trial—Judge Emil Karl Prohl received numerous illegal payments from the District Attorney of Kerr County, Ron Sutton, to attend various legal seminars that amounted to all-expenses paid vacations.  Petitioner argues that these payments resulted in several rulings that favored the prosecution during his trial, thus denying him a right to a fair and impartial tribunal.

21

Despite the fact that Petitioner raised this allegation in his state habeas application, the state court appears to have ignored the issue entirely.  In its order remanding the case to the trial court for further factual findings, the TCCA mentions only Petitioner's IATC and *Brady* claims and orders the lower court to make findings of fact and conclusions of law on those two issues. (ECF No. 19-4).  The trial court obliged and addressed only the IATC and *Brady* claims at the evidentiary hearing and in its subsequent findings of fact and conclusions of law.  (ECF Nos. 17-7 at 14; 18-9 at 62-65).  The TCCA later denied the application without a written order based solely on the findings of the trial court.  (ECF No. 19-3 at 2).

Because it appears that Petitioner's judicial bias claim has not been adjudicated on the merits in state court, this Court will not apply the deferential scheme laid out in § 2254(d) and will instead "apply a *de novo* standard of review."  *Ward v. Stephens*, 777 F.3d 250, 256 (5th Cir. 2015).[5]

      1.    <u>Relevant Background</u>

Starting in 2002, Kerr County District Attorney Ron Sutton began misappropriating funds collected under the State's asset forfeiture statute.  *See* Tex. Code. Crim. Proc. Art. 59.06.  For a period of roughly seven years, Sutton used these funds to pay for travel expenses—including meals, lodging, transportation, airfare, and entertainment—for himself, his spouse, his employees, and his employee's spouses.  (ECF No. 67 at 283-89).  He also used these funds to pay for the travel expenses of Judge Prohl and his wife.  *Id*. at 287-88.  All told, Judge Prohl

---

[5]      The Court is aware that, when reviewing a state habeas court's decision under the AEDPA, it should review "only the ultimate legal determination by the state court—not every link in its reasoning."  *Trottie*, 720 F.3d at 241; *see also Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) ("[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.").  In the instant case, however, it is not at all apparent whether the state court even made an ultimate legal conclusion on Petitioner's judicial bias claim.  Thus, out of an abundance of caution, this Court will review the allegation *de novo*.

received over $33,000 from Sutton for travel expenses incurred from 2003 to 2007, which included trips to Maine, Alaska, Hawaii (twice), and California. *Id*. at 300-03.

In July 2008, Petitioner, along with two co-defendants, filed a complaint against Judge Prohl with the State Commission on Judicial Conduct. *Id*. at 270-79. A little over a year later, Judge Prohl agreed to resign from his judicial office rather than face disciplinary action from the Commission. *Id*. at 280-82. Shortly thereafter, he was indicted in the 216th judicial district court of Kerr County on one count of theft by a public servant (17 different acts), a second-degree felony. *Id*. at 290-93. Prohl plead guilty in April 2010 in exchange for a probated, two-year sentence.[6] *Id*. at 299-303. He was also required to pay a $2,500 fine, repay over $17,000 as restitution, perform 200 hours of community service, and surrender his law license. *Id*.

2.   Standard for Judicial Bias Claims

The Due Process Clause guarantees the right to a fair trial, "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quoting *Bracy v. Gramley*, 520 U.S. 899, 905 (1997)). Bias is not "lightly established," however, and "general allegations of bias or prejudice are insufficient to establish a constitutional violation." *Id*. Indeed, federal law presumes that trial judges act fairly and impartially, and the burden is on the defendant to prove otherwise. *Bracy*, 520 U.S. at 909. If this burden is met, a criminal defendant is entitled to have his conviction set aside, "no matter how strong the evidence against him." *Edwards v. Balisok,* 520 U.S. 641, 647 (1997) (citations omitted).

Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). To

---

[6]      Around the same time, Sutton plead guilty to two counts of misapplication of fiduciary funds, a third-degree felony, and also received a probated, two-year sentence along with a $20,000 fine. *Id*. at 284-89, 294-98.

prove actual bias, a defendant must show that the judge had a prejudiced disposition *in his own case*. *Bracy*, 520 U.S. at 909 (emphasis in original). To this end, he should present actions demonstrating the judge's animus toward him, beyond mere errors in the judge's ruling. *See Cubas v. Thaler*, 487 Fed. App'x 128, 131 (5th Cir. 2012) (unpublished). Such proof is difficult to marshal, so almost every successful bias case before the Supreme Court has been based on presumptive bias. *Buntion*, 524 F.3d at 672.

Presumptive bias occurs when there is an appearance of bias such that "the probability of actual bias . . . is too high to be constitutionally tolerable." *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). In applying this standard, the court must determine "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). The Supreme Court has found that presumptive bias occurs when a judge (1) has a direct personal, substantial and pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the party before him, and (3) has the dual role of investigating and adjudicating disputes and complaints. *Buntion*, 524 F.3d at 672 (quoting *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)).

 3. <u>Analysis</u>

Petitioner argues that the improper gifts Judge Prohl received from Sutton from 2003 to 2007 amounted to bribes in exchange for favorable rulings. According to Petitioner, several of Judge Prohl's decisions both before and during trial were motivated by the undue influence the prosecution had garnered as a result of the bribes. These decisions allegedly include: (1) granting the State's motion for continuance but denying his own motion following the severance of the other defendants, (2) holding a "secret" bond reduction hearing for a State

witness prior to Petitioner's trial, (3) excluding defense witness Trisha Gonzales from testifying after violating "the Rule," and (4) failing to intervene during the State's improper argument.

Initially, this Court finds Judge Prohl's actions in accepting numerous lavish vacations on the taxpayer's dime to be troubling, to put it mildly. At worst, Judge Prohl's behavior demonstrates a willful disregard for "the high standards that judges should strive to maintain." *Buntion*, 524 F.3d at 676. At best, it shows an unacceptable ignorance of those standards. Either way, Judge Prohl's inappropriate actions in accepting these vacations courtesy of the district attorney do not, in and of themselves, support a *per se* finding that every case over which he presided was infected with actual bias. A petitioner still needs to present evidence that the judge "was actually biased *in petitioner's own case*." *Bracy,* 520 U.S. at 909 (emphasis in original).

Petitioner fails to make this showing. Instead, Petitioner simply lists decisions by the trial court with which he disagreed and baldly asserts the court had been bribed by the State in return for favorable rulings. But disagreeing with a judge's rulings is not the same as establishing a particularized bias, and Petitioner points to no evidence of Judge Prohl displaying such "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Even assuming the decisions in question were erroneous, they do not demonstrate any particular animus on the judge's part toward Petitioner himself. Thus, despite Judge Prohl's indefensible behavior from 2003 to 2007, Petitioner's allegations do not support a finding of actual bias in the instant case.

Because Petitioner failed to demonstrate actual bias, he must show that Judge Prohl was presumptively biased in his case in order to demonstrate a due process violation and obtain habeas relief. Again, with regard to presumptive bias, the Court must determine "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an

unconstitutional potential for bias." *Williams*, 579 U.S. at 8.  This has been found when a judge (1) has a pecuniary interest in a case's outcome, (2) has been the target of personal abuse or criticism from a party, and (3) has the dual role of both investigating and adjudicating disputes. *Buntion,* 524 F.3d at 672.

This case does not resemble any of the above instances in which the Supreme Court found a presumptive bias.  Petitioner makes no argument that he abused or criticized Judge Prohl, or that Judge Prohl had acted as both investigator and judge in this case.  And while Judge Prohl certainly received reimbursement from Sutton for travel expenses related to trips he and his wife took with Sutton and his staff, there is no evidence that the payments were in any way related to the outcome in Petitioner's, or any other particular defendant's, case.[7]  In fact, Judge Prohl had been receiving those payments long before Petitioner had even been arrested.  As such, the Court concludes that Petitioner's allegations do not demonstrate presumptive bias under available Supreme Court precedent.

4.      Summary

Judge Prohl was forced to resign by the Texas State Commission on Judicial Conduct for his behavior in this case.  He was also later convicted of theft by a public servant and sentenced to serve a two-year, probated sentence.  There is no question that his actions from 2003 to 2007 were highly improper.  Yet, under clearly establish Fifth Circuit and Supreme Court precedent, Judge Prohl's inappropriate actions off the bench do not support a finding that he was either actually or presumptively biased against Petitioner in this case.  Consequently, after carefully reviewing the record and arguments of the parties, the Court concludes that Petitioner's second allegation is without merit and does not warrant federal habeas corpus relief.

---

[7]      If this were not the case, bias could doubtlessly be found in any one of the hundreds of cases that Judge Prohl presided over during this time period.  To the Court's knowledge, however, there has been no finding of bias in any of the cases before Judge Prohl while he was accepting payments from the district attorney.

C.    **Prosecutorial Misconduct** (Claim 3)

In his final claim for relief, Petitioner contends that the State's failure to turn over impeachment evidence that State witness Stephen Flores was given "valuable benefits" in exchange for his testimony violated Petitioner's Due Process rights under *Brady v. Maryland*, 373 U.S. 83 (1963).  (ECF No. 13 at 182-94).  According to Petitioner, the State denied making a deal with Flores for his testimony, yet stood silent at a "secret" pretrial bond hearing where Flores' bond was reduced to $30,000.  Petitioner also contends the State failed to disclose (1) a recording of an alleged conversation between Flores and the District Attorney, (2) that Flores was allowed out of jail sometime in December 2005 or January 2006, (3) evidence that the three complainants continued illegal behavior prior to Petitioner's trial, and (4) evidence that Flores was given leniency because he was a confidential informant in a federal investigation.

Each of these alleged errors were raised during Petitioner's state habeas proceedings and ultimately rejected by the TCCA.  (ECF No. 19-3 at 2).  As discussed below, Petitioner fails to show that this determination was either contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

1.    The *Brady* Standard

It is well-established that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  To establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) that evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v.*

*Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *United States v. Bagley*, 473 U.S. 667, 684 (1985).  But the materiality of *Brady* evidence "depends almost entirely on the value of the evidence relative to the other evidence mustered by the state."  *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) (quoting *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)).  "If the evidence provides only incremental impeachment value, it does not rise to the level of *Brady* materiality."  *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005).

   2. <u>Analysis Under the AEDPA</u>

  Similar to his previous allegations, Petitioner first raised his *Brady* allegations during his state habeas proceedings.  Following the state habeas trial court's extensive evidentiary hearing, the court issued findings of fact and conclusions of law recommending the denial of habeas relief.  Regarding Petitioner's *Brady* allegations, the court made the following findings of fact:

  1. There is not any document memorializing any alleged agreement between the State and witness Flores ["Pork Chop"].

  2. Bond hearings on Pork Chop were in open court memorized by publicly filed and accessible Orders.

  3. Assistant District Attorney Barton denied any agreement at trial and still denies any agreement existed.

  4. At trial Pork Chop denied any deal with the State.

  5. Pork Chop's judgment reflects an open plea to the Court.

  6. There is insufficient evidence to establish that the 198th District Attorney was aware of Pork Chop's Bexar County offense.

(ECF No. 18-9 at 64).  The court concluded by stating:

  The 198th District Court is a general jurisdiction court that regularly conducts all manner of public hearings on any given day as scheduled by agreement between the parties.  There is no evidence of a secret hearing and there

is no evidence of a consideration agreement between Pork Chop and the State. Despite the bond reduction granted by the Court there was no evidence presented that Pork Chop was released on bond prior to trial.

There is insufficient evidence to conclude that the State violated *Brady v. Maryland*.

*Id*. at 64-65.

Petitioner fails to show that the state court's rulings were contrary to, or involved an unreasonable application of *Brady* or were an unreasonable determination of the facts based on the evidence in the record.  Indeed, Petitioner satisfies none of the *Brady* requirements, as his allegations of suppressed evidence are conclusory, speculative, and unsupported in the record. While Petitioner relies on the fact that Flores' bond was reduced prior to Petitioner's trial, there is no evidence in the record to support his assertion that the bond reduction was "secret" or the result of an agreement with the State in exchange for testimony.  To the contrary, testimony at the state habeas evidentiary hearing demonstrates that the bond hearing was public and that no agreement was ever made between Flores and the State.  (ECF Nos. 17-7 at 38-42; 67 at 428).

Similarly, there is no evidence (1) of a recording between Flores and the District Attorney where a deal was allegedly struck, (2) that Flores was allowed out of jail prior to Petitioner's trial, (3) that the complainant's broke the law while waiting for Petitioner's trial, or (4) that Flores was a confidential informant in a federal investigation.  Petitioner does not allege any facts to support or substantiate that these allegations happened, much less that they were suppressed by the prosecution.  Such conclusory allegations do not entitle a petitioner to habeas corpus relief.  *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a *Brady* claim"); *Koch*, 907 F.2d at 530 (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Accordingly, Petitioner has not established a *Brady* violation, and thus fails to demonstrate that the state court's rejection of his claim was either contrary to, or an unreasonable application of, clearly established federal law.  Relief is denied.

## V.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  But a COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 336).

The Court concludes that Petitioner's Claim 2 regarding the potential bias of Judge Prohl deserves encouragement to proceed further.  In that allegation, Petitioner argued that various payments Judge Prohl received from the district attorney during a five-year time period surrounding Petitioner's trial amounted to a bribe for favorable rulings.  While recognizing the impropriety of Judge Prohl's actions, the Court nevertheless found that Petitioner failed to

demonstrate any actual or presumptive bias on the part of Judge Prohl at Petitioner's trial under prevailing Fifth Circuit and Supreme Court precedent. *See* Section IV(B), *supra*.

However, the question of whether, as an objective matter, Judge Prohl's actions created "an unconstitutional potential for bias" is a close and difficult one, particularly given that the right to a fair and impartial process is the cornerstone of the American judicial system. *Williams*, 579 U.S. at 8. The Court acknowledges that a different jurist might reasonably reach a different determination. Accordingly, the Court will grant Petitioner a COA on Claim 2 as to whether Petitioner has established a viable claim of presumptive bias against Judge Prohl.

For the remaining IATC claims (Claim 1) and *Brady* claims (Claim 3) raised by Petitioner, he has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor could reasonable jurists debate the denial of federal habeas corpus relief on either substantive or procedural grounds, or find that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). As such, no further COA is warranted.

## VI. Conclusion and Order

Petitioner failed to establish that the state court's rejection of Claims 1 and 3 on the merits during either his direct appeal or state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. Petitioner also fails to demonstrate that Claim 2 is meritorious, even under a *de novo* standard of review. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Jesus Jaime Jimenez's

Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 67) is

**DISMISSED WITH PREJUDICE**;

2.      A limited Certificate of Appealability is **GRANTED** in this case; and

3.      All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the __28th__ day of February, 2023.


__                                                    __

                    **ORLANDO L. GARCIA**
                    **United States District Judge**